IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

DIAMOND STATE INSURANCE CO.,

    Plaintiff,

v.

CASE NO. CV409-157

ANDREA RE, d/b/a Re Realty,

    Defendant.

## ORDER

Before the Court is Plaintiff Diamond State Insurance Company's Motion for Summary Judgment. (Doc. 41.) Defendant Andrea Re did not file a response. For the following reasons, Plaintiff's motion is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff and close this case.

### BACKGROUND

This case stems from a dispute concerning the scope of coverage provided by two insurance policies issued by Plaintiff. Defendant Andrea Re is a licensed real estate broker and the sole principal of Re Realty.[1] (Doc. 41,

---

[1] Because Defendant did not respond to Plaintiff's motion, the Court accepts as true Plaintiff's factual statements for the purpose of ruling on its motion. See S.D.L.R. 7.5 ("Failure to respond within the applicable time period shall indicate that there is no opposition to a motion."); Id. 56.1 ("All material facts set forth in the statement [of material facts] required to be served by the moving

Attach. 1 at 3.) As her business grew, Defendant became associated with several real estate sales agents when they affiliated their agent licenses with Defendant's broker license. (Id.) Because part of these associates' business involved accepting security deposits and rents, Defendant was required to maintain a trust account for these funds and register it with the Georgia Real Estate Commission. (Id.); see O.C.G.A. § 43-40-20(a); id. 43-40-20(b).

Sometime in 1996, Lavinia Strickland, whose real estate agent license was affiliated with Defendant's broker license, operated Re Realty Property Management Division ("RRPMD"), which engaged in the business of managing rental properties. (Doc. 41, Attach. 1 at 3-4.) Ms. Strickland was the sole owner of RRPMD, which was a separate business entity from Re Realty. (Id. at 4.) While in operation, RRPMD maintained separate bank accounts to hold funds paid by tenants of properties managed by RRPMD. (Id.) Defendant never received or reviewed any bank statements for the RRPMD accounts. (Id.)

Late in 2008, Elizabeth Garrigus purchased RRPMD from Ms. Strickland, renaming it Re Realty Rentals ("RRR"). (Id.) The business remained separate and distinct from Re

party will be deemed to be admitted unless controverted by a statement served by the opposing party.").

Realty, continuing to maintain separate bank accounts for security deposits and rents. (Id.) This time, however, Defendant signed the Deposit Account Agreements for the RRR accounts, but failed to register them with the Georgia Real Estate Commission. (Id. at 4-5); see O.C.G.A. § 43-40-20(b).

Also in late 2008, Ms. Garrigus informed Defendant that there were some discrepancies concerning the RRPMD accounts. (Doc. 41, Attach. 1 at 4.) In April 2009, RRR closed its doors, ceasing business operations. (Id. at 5.) Around this time, Ms. Garrigus informed Defendant that there was insufficient money in RRR's security deposit and rental trust accounts to pay for all of its outstanding liabilities. (Id.) All told, approximately $170,000 was missing from the trust accounts due to Mses. Strickland and Garrigus unlawfully converting or misappropriating the funds for their private uses. (Id.) Several individuals and entities sued Defendant for the return of deposits and rental funds, with Plaintiff defending Defendant under a reservation of rights. (Id. at 6.)

According to Plaintiff, Defendant submitted applications for insurance in May 2007 and April 2008. (Id.) In these applications, Defendant stated that Re Realty had a staff member with thirteen years experience

3

managing properties and that Defendant was engaged in the business of providing property management services, specifically RRPMD. (Id. at 6-7.) However, Plaintiff was never informed that RRPMD was a separate entity over which Defendant had no control. (Id. at 7.) According to Plaintiff, it would have declined to issue the subject insurance policy if it had been aware that Defendant exercised no control over the separate business entities involved in property management. (Id.)

On October 15, 2009, Plaintiff filed a complaint with this Court. (Doc. 1.) With the consent of Defendant (Doc. 14), Plaintiff filed an amended complaint on January 8, 2010.[2] (Doc. 13.) In the amended complaint, Plaintiff seeks a declaratory judgment that the insurance policy does not require it to defend or indemnify Defendant for claims arising out of the misappropriated funds. (Id. ¶ 43.) On May 20, 2011, Plaintiff filed its Motion for Summary Judgment. (Doc. 41.) In the motion, Plaintiff argues that coverage does not exist because Defendant misrepresented her role in the property management entities. (Id. at 8-13.) In addition, Plaintiff contends that Defendant's

---

[2] Oddly, even though she answered the first complaint, Defendant failed to answer the amended complaint. Of course, this would entitle Plaintiff to a default judgment.

4

failure to comply with some of the policy's conditions preclude coverage under the policy. (Id. at 14-20.) Finally, Plaintiff reasons that several exclusions bar coverage. (Id. at 20-23.) Defendant did not respond to Plaintiff's motion.

## ANALYSIS

I. SUMMARY JUDGMENT STANDARD

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

---

Surprisingly, however, Plaintiff never requested that type of relief.

5

on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not

6

suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

Even though a motion requesting summary judgment is unopposed, it may only be granted when appropriate—there must be an evidentiary showing that the moving party is entitled to judgment as a matter of law. United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004). To this end, a district court cannot simply accept the factual statements in the unopposed motion as true, "but must ensure that the motion itself is supported by evidentiary materials." Id. It is only when the court concludes that the moving party's factual statements find evidentiary support in the record that the court may grant an unopposed request for summary judgment. See id.

II. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In its Motion for Summary Judgment, Plaintiff contends that Defendant is not entitled to coverage under the policy pursuant to O.C.G.A. § 33-24-7(b)(2). (Doc. 41, Attach. 1

at 8-10.) Under that provision, misrepresentations or incorrect statements may preclude recovery under an insurance policy if they are "[m]aterial either to the acceptance of the risk or to the hazard assumed by the insurer." O.C.G.A. § 33-24-7(b)(2). For a misrepresentation to be material, it must be " 'one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing a different amount of premium in the event of such acceptance.' " Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331, 1340 (11th Cir. 2009) (quoting Lively v. S. Heritage Ins. Co., 256 Ga. App. 195, 196, 568 S.E.2d 98, 100 (2002)). The focus is not on the misrepresentation's effect on any particular insurer. Id. Rather, a court should look to " 'an objective standard of conduct against which to measure the effect of the insured's false declarations.' " Id. (quoting Woods v. Indep. Fire Ins. Co., 749 F.2d 1493, 1497 (11th Cir. 1985)).

In support of its motion, Plaintiff has submitted the affidavit of one of their underwriters—Margaret Robinson. (Doc. 41, Ex. 13.) In the affidavit, Ms. Robinson stated that, from an underwriting perspective, "[t]here is a substantial difference between a policyholder actively operating, supervising and controlling its own property

8

management business and a policyholder who is not engaged in the business of property management." (Id. ¶ 15.) According to Ms. Robinson, "[t]his changes the nature, extent and character of the risks being insured against." (Id.) In addition, she states that if Plaintiff, as a prudent insurer, knew that Defendant was not in control of the property management operations, then it would have either not offered Defendant the policy in question or modified it to exclude claims arising from property management services. (Id. ¶ 16.)

After reviewing the record, this Court must conclude that Plaintiff is entitled to summary judgment. Based on the lack of any opposition offered by Defendant,[3] the Court concludes that Plaintiff has adequately established that Defendant's misrepresentations on the insurance applications were material. As a result, Plaintiff is not required to provide coverage for the claims that they would have declined to insure absent Defendant's material

---

[3] The Court notes that it would not have been difficult for Defendant to create a genuine issue of material fact with respect to this contention. By not offering any response, however, the Court must accept the truth of Plaintiff's factual assertion, which is supported by evidence in the record.

9

misrepresentation. Accordingly, Plaintiff's Motion for Summary Judgment is **GRANTED**.[4]

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **GRANTED**. The Clerk of Court is **DIRECTED** to enter the appropriate judgment in favor of Plaintiff and to close this case.

SO ORDERED this 20th day of March 2012.

*/s/ William T. Moore, Jr.*
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[4] Because the Court finds that Plaintiff is entitled to summary judgment based on O.C.G.A. § 33-24-7(b)(2), it need not address the remainder of Plaintiff's arguments.

10